

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-5309-A
Re: Imposition of motor fuel tax (Article 7065b V.A.C.S.) upon sales and uses by federal agencies and instrumentalities and by cost-plus contractors engaged on projects for the federal government.

In our Opinions O-4389 and O-5309, addressed to you, we discussed the question stated in the above caption and rendered our advice with respect thereto upon the facts which you submitted. Due to a suggestion that these opinions are in part conflicting, we are reconsidering them herein.

Briefly stated, the opinions cited above dealt with the following situation:

Certain organizations which are admittedly federal agencies and instrumentalities, such as the Engineer Office of the War Department and the Defense Plant Corporation, are engaged in war work in this State. In furtherance of their activities, these organizations have entered into "cost-plus" contracts with various private contractors, such as the Fort Worth Aircraft Assembly Plant and the Emergency Pipelines, Inc. In general these contracts follow a common pattern, with provisions whereby the federal agencies reimburse the contractors for materials and labor used by the latter,

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Geo. H. Sheppard, Page 2

and, in addition, pay to the contractors a stipulated profit. Although the contracts normally provide that, subject to certain controls, the contractors may themselves purchase the necessary materials, the federal agencies reserve the right to purchase such materials and to furnish them to the contractors whenever they so desire.

With reference to the activities of the federal agencies and their contractors, the following types of transactions occur: (a) motor fuels are sold to the federal agencies and used by them; (b) motor fuels are sold to the federal agencies and are then turned over to the contractors for use by them; (c) motor fuels are sold to and used by the contractors. The questions discussed in our former opinions have arisen in connection with these three situations.

For purposes of this opinion we feel that it is immaterial whether these fuels are used in vehicles owned by the federal agencies, in vehicles owned by the contractors, or in vehicles owned by the federal agencies and leased to the contractors.

I.

Motor fuels sold to and used by federal agencies: Section 2(d) of the Motor Fuels Tax Act (Article 7065b V.A. C.S.) provides in part as follows:

"No tax shall be imposed upon the sale, use, or distribution of any motor fuel, the imposing of which would constitute an unlawful burden on interstate commerce and which is not subject to be taxed under the Constitution of the State of Texas and the United States."

Although large inroads have been made on the doctrine of inter-governmental tax immunity as established by Chief Justice Marshall in the case of McCulloch v. Maryland, 4 Wheat 316, 4 U.S. 579 (L. Ed.), the doctrine still persists at least to the extent of affording immunity from state taxation to the

Honorable Geo. H. Sheppard, Page 3

federal government itself and to those federal agencies
and instrumentalities which Congress has chosen to declare
tax exempt, Pittman v. H. O. L. C., 308 U.S. 21, 84 L. Ed.
11, 60 Sup. Ct. 15. Typical of the latter type of agency
is the Defense Plant Corporation, which in Section 610 of
Title 15, U.S.C.A., the Congress has declared to be exempt
from all sales, use, storage and purchase taxes imposed by
any state or political subdivision. We are of the opinion
that this doctrine and the above quoted provision of our
tax statute preclude the imposition of our motor fuels tax
upon sales or uses by the federal government and by federal
agencies and instrumentalities which Congress has exempted.
Consequently, you are respectfully advised that no tax
should be levied or collected upon such sales or uses.

## II.

Motor fuels sold to federal agencies and used by
contractors: Were our motor fuels tax a sales tax, doubt-
less the federal government and exempt federal agencies and
instrumentalities could purchase the fuel and permit its use
by their contractors without the incurrence by either of
liability for such tax. However, our tax plainly is more
than a sales tax. Section 2(a) of the tax statute provides
in part:

> "There shall be and is hereby levied and im-
> posed (except as hereinafter provided) upon the
> first sale, distribution or use of motor fuel in
> this State an occupational or excise tax of Four
> (4) cents per gallon or fractional part thereof
> so sold, distributed, or used in this State . . . .
> In each subsequent sale or distribution of motor
> fuel upon which the tax of Four (4) cents per
> gallon has been collected, the said tax shall be
> added to the selling price, so that such tax is
> paid ultimately by the person using or consuming
> said motor fuel for the purpose of generating
> power for the propulsion of any motor vehicle up-
> on the public highways of this State. It is the
> intent and purpose of this Article to collect the
> tax levied herein at the source of said motor fuel
> in Texas or as soon thereafter as the same may be
> subject to being taxed . . . ." (Emphasis added)

Honorable Geo. H. Sheppard, Page 4

Moreover, Section (d) provides in part:

"In the event this Article is in conflict
with the Constitution or any law of the United
States with respect to the tax levied upon the
first sale, distribution, or use of motor fuel
in this State, then it is hereby declared to be
the intention of this Article to impose the tax
levied herein upon the first subsequent sale,
distribution, or use of said motor fuel which
may be subject to being taxed."

Regardless of how our former motor fuels tax stat-
ute (Acts 1933, 43rd Leg., p. 75, ch. 44, as amended by Acts
1935, 44th Leg., p. 558, ch. 240) might have been construed,
we are satisfied that the legal incidence of the present tax
is upon the ultimate user or consumer of motor fuels and that
the statutorily defined "distributor" of such fuels is merely
a bonded fiduciary or agent of the State for the purpose of
aiding in the collection of the tax. Moreover, in view of the
portion of Section (d) quoted supra, we feel that even though
the "sale" of motor fuels to the federal government or certain
of its agencies might be tax exempt, it was the intention of
the legislature to levy a tax on any subsequent "use" of such
fuels which might constitutionally be taxed. It remains to be
seen whether the tax may constitutionally be levied upon con-
tractors of the type under discussion who use such fuels.

That such cost-plus contractors are neither agencies
nor instrumentalities of the federal government is, we feel,
settled by the cases of Alabama v. King & Boozer, 62 Sup. Ct.
43, 66 L. Ed. 1, and Curry v. United States, 62 Sup. Ct. 48,
86 L. Ed. 9. These cases are quoted and discussed at length
in our Opinion No. O-4389, and we adhere to the analyses of the
cases there made. However, even though the contractors them-
selves are neither federal agencies nor instrumentalities, the
argument is made that a tax upon the use of materials by cost-
plus contractors is in effect a tax upon a federal agency or
instrumentality since the amount of the tax will be reflected
in the increased cost of the materials to the organizations
which employ such contractors. The force of such an argument
is destroyed when considered in the light of the numerous re-
cent cases which hold that a general, non-discriminatory tax

Honorable Geo. H. Sheppard, Page 5

is not constitutionally objectionable merely because its imposition upon a vendor or contractor may result in a slight increase in the cost of goods or services acquired by the federal government. Thus, in Alabama v. King & Boozer, supra, Chief Justice Stone said:

"The asserted right of the one (government) to be free of taxation by the other does not spell immunity from paying the added cost attributable to the taxation of those who furnish supplies to the government and who have been granted no tax immunity. So far as a different view has prevailed, see Panhandle Oil Co. v. Mississippi and Graves v. Texas Co., supra, we think it no longer tenable." (Parenthetical word added)

Likewise, in Curry v. United States, supra, the Chief Justice said:

"If the state law lays the tax upon them (cost-plus contractors) rather than the individual with whom they enter into a cost-plus contract like the present one, then it affects the Government, like the individual, only as the economic burden is shifted to it through operation of the contract. As pointed out in the opinion in the King & Boozer Case, by concession of the Government and on authority, the Constitution, without implementation by congressional legislation, does not prohibit a tax upon Government contractors because its burden is passed on economically by the terms of the contract or otherwise as a part of the construction cost to the Government." (Parenthetical word added)

See also James v. Dravo Contracting Co., 302 U.S. 134, 58 Sup. Ct. 208, 82 L. Ed. 155; Federal Land Bank of St. Paul v. De Rochford, 287 N.W. 522 (N.D.); Western Lithograph Co. v. State Board of Equalization, 11 Cal. (2d) 156, 78 P. (2d) 731.

Consequently, you are respectfully advised that when a tax exempt federal agency purchases motor fuels in this State and permits the use of such fuels by its cost-plus contractors, our motor fuels tax attaches to the use of such fuels and the contractors are liable for such tax.

Honorable Geo. H. Sheppard, Page 6

### III.

Motor fuels sold to and used by the contractors: The above discussion compels the conclusion that the motor fuels tax accrues in a situation where motor fuels are both sold to and used by a cost-plus contractor of the type under discussion, and you are respectfully advised that the tax is due in such a situation.

This opinion merely amplifies and affirms the conclusions reached in our Opinion No. O-4389, and is in no way intended to alter such opinion. Since this opinion is in direct conflict with most of the statements and conclusions in our Opinion No. O-5309, the latter opinion is hereby overruled and withdrawn.

Trusting that the foregoing satisfactorily resolves any conflicts which may have existed in the opinions of this department, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By R. Dean Moorhead

R. Dean Moorhead
Assistant

APPROVED MAR 13, 1944

ATTORNEY GENERAL OF TEXAS

RDM:ff



APPROVED OPINION COMMITTEE BY BWB CHAIRMAN